# CASE NO. 15-3119

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

## DENNY HENRY, et al.,

## PLAINTIFF-APPELLANTS,

## VS.

## CITY OF MIDDLETOWN,

## DEFENDANT-APPELLEE.

---

**On Appeal from the
United States District Court
For the Southern District of Ohio**

---

## APPELLANTS' MERIT BRIEF

---

Christopher J. Pagan
Attorney for Plaintiffs
Repper, Powers & Pagan, Ltd.
1501 First Avenue
Middletown, OH 45044
513-424-1823 (Office)
513-424-3135 (Fax)

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

Pursuant to 6th Cir.R. 25, appellants make the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly-owned corporation?

   No.

2. Is there a publicly-owned corporation, not a party to the appeal, that has a financial interest in the outcome?

   No.

/s/Christopher J. Pagan
Christopher J. Pagan
Counsel for Plaintiffs

5-27-15
_____
Date

# TABLE OF CONTENTS

Page:

Disclosure of Corporate Affiliations ................................................................. ii

Table of Contents ................................................................................................ iii

Table of Authorities ........................................................................................... v

Request for Oral Argument ............................................................................... vii

Statement of Jurisdiction ................................................................................... 1

Statement of the Issues Presented for Review ............................................... 1

Statement of the Case and Facts ...................................................................... 1

Summary of the Argument ................................................................................ 11

Argument ............................................................................................................. 12

Conclusion ........................................................................................................... 30

Certificate of Counsel ........................................................................................ 31

Proof of Service .................................................................................................. 31

Addendum ............................................................................................................ 32

Designation of Relevant Documents ................................................................ 32

# TABLE OF AUTHORITIES

*Broadvue Motors, Inc. v. Maple Hts. Police*, 135 Ohio App.3d 405, (8th Dist. 1999) ...................................................................... 6,8

*Doughman v. Long*, 42 Ohio App.3d 17 (12th Dist. 1987) ..................... 5,7,10

*Frier v. City of Vandalia*, 770 F.2d 669 (7th Cir. 1985) ............................. 10

*Labay v. Caltrider*, 9th Dist. App. No. 22233, 2005-Ohio-1282 ............... 5,8

*Mathews v. Eldridge*, 424 U.S. 319, 47 L.Ed.2d 18 (1976) ........................... 8

*Montgomery v. Carter County*, 226 F.3d 758 (6th Cir. 2000) ...................... x

*Moore v. Board of Educ. of Johnson City Schools*, 134 F.3d 781, 784 (6th Cir. 1998) .......................................................................... 8

*Seay v. TVA*, 339 F.3d 454 (6th Cir. 2003) ...................................................... x

*Smith v. State Highway Patrol,* Court of Claims No. 2006-02609-AD, 2007-Ohio-6397 ................................................................... 5

*State Farm Ins. Co. v. Jones*, 11th Dist. App. No. 2002-P-0063, 2003-Ohio-4035 ....................................................................... 5

*United States v. Good Real Property*, 510 U.S. 43, 126 L.Ed.2d 490 (1993) ..................................................................................... 9

# STATUTES AND OTHER AUTHORITIES

R.C. 2933.41 ................................................................................... 5,7

R.C. 2981.11 ............................................................................... 4,5,7,8

R.C. 4513.61 ................................................................... 1,2,4,5,6,7,8,9,10

R.C. 4513.62 ................................................................................. 1,2,3

## REQUEST FOR ORAL ARGUMENT

Appellants submit that oral argument should be heard in this case, as the issues raised in the appeal require further explanation beyond the instant written brief, and also, that oral argument will facilitate the decision-making process. Thus, appellants pray that this court grant oral argument.

/s/ Christopher J. Pagan
Christopher J. Pagan

## STATEMENT OF JURISDICTION

This is a § 1983 case. The district court had federal-question jurisdiction under 42 U.S.C. § 1983 and this court maintains jurisdiction under 28 U.S.C. § 1291. Plaintiffs filed a timely Notice of Appeal on 10 February 2015.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

**A.** R.C. 4513.61 authorizes a City to transfer a car title to itself when the owner has abandoned the vehicle, where abandonment means an intentional relinquishment. This title-transfer provision has no application to an owner whose car is seized by the police in a criminal case.

**B.** R.C. 4513.61 permits a City to recoup removal and storage costs from an owner that abandons his vehicle because he impliedly consents to the removal and its costs by his abandonment. But these costs cannot be assessed if the vehicle is not abandoned in the first instance.

**C.** Ohio law places a duty on a City to safeguard and return a vehicle to its owner when its reason for holding it has ended.

**D.** The City's policy, practice, and custom was to unilaterally determine it had satisfied the elements under R.C. 4513.61 in order to take car titles from owners. This violated due process. An adversary hearing with a neutral factfinder was necessary to determine the facts surrounding abandonment and to remove the City's financial incentive to decide cases in its favor; Appellants possessed a substantial interest in the ownership and use of their vehicles; and the City's interest under R.C. 4513.61 in clearing streets was accomplished by seizing vehicles in the first instance, so a post-seizure hearing would not interfere with the City's interest.

**E.** The City's policy, practice, and custom was to unilaterally determine it had satisfied the elements under R.C. 4513.61 in order to take car titles from owners. In Henry's case, this constituted an unconstitutional private taking where the City assigned Henry's car title to Mark's Towing, a private business, without an attendant public benefit.

## STATEMENT OF THE FACTS AND CASE

Henry, while drunk and suffering from the onset of dementia, fired a rifle into a home from his Dodge Neon. The police investigated. They

1

found Henry at his home. The Neon was parked in Henry's driveway with shell casings in plain view on the seat. [Doc. 18-1, Henry Police Report, PAGEID 71] Officers conducted a search of the Neon and collected evidence from it. [Id.] They ordered the Neon towed by Mark's Towing from Henry's driveway to that company's lot. [Doc. 18-2, Impound Ticket, PAGEID 79] An officer documented that the reason for towing the Neon was Henry's arrest. [Id.]

Henry was held in the Middletown City jail on weapons offenses for 16-days, when his offenses were resolved to a misdemeanor. [Doc. 21-2, Henry Affidavit, ¶ 6, PAGEID 123] While incarcerated in the City jail, police administration sent Henry a form letter to his home regarding the Neon. [Doc. 18-2, Form Impound Letter, PAGEID 78] The letter instructed Henry to contact the Middletown police to recover the Neon; that its release required proof of title, a court writ, or court order; and that, under R.C. 4513.61 and .62, the City would sell the Neon at auction in 10-days "*** if no action is instituted, by you or your agency, to reclaim it." [Id.]

Because he was incarcerated, Henry did not receive the initial letter sent to his home. He did not receive re-mailings of the form letter because he was hospitalized for, respectively, a heart attack, dementia, and

2

pneumonia for the next 2.5-months. [Doc. 21-2, Henry Affidavit, ¶¶ 5-11, PAGEID 123]

Henry's friend, Ken Brewer, who also owns a car lot, visited Henry at the hospital on 23 August 2011. [Doc. 18-3, Brewer Affidavit, ¶ 3, PAGEID 85] Henry told Brewer that his Neon was impounded and authorized him to retrieve it. [Id. at ¶ 4] On 29 August 2011, police administration informed Brewer that the Neon was located at Mark's Towing. [Id. at ¶ 5] So Brewer called Mark's Towing and told them he would retrieve the car and pay the bill. [Id. at ¶ 6] But when Brewer followed up with Mark's Towing on 7 September 2011, they told him the car had been sold at auction. [Id. at ¶ 7]

When Henry was released from the hospital in October 2011, he required a car because he wife had recently died and the Neon had been his sole transportation for medical care and errands. [Doc. 21-2, Henry Affidavit, ¶ 16, PAGEID 123] He solicited Brewer for a replacement car. [Doc. 18-3, Brewer Affidavit, ¶ 8, PAGEID 85]

While working on the paperwork for the replacement car, Brewer obtained information from the Ohio BMV database about Henry's Neon. He discovered that (*i*) the City completed paperwork to assign the Neon's title to Mark's Towing under R.C. 4513.61 on 23 August 2011; (*ii*) Mark's

3

Towing received title to the Neon on 15 or 16 September 2011, and (*iii*) Mark's Towing sold the Neon at auction a day or so after obtaining the title. [Doc. 18-3, Brewer Affidavit, ¶¶ 9-10; and Doc. 21-2, Henry Affidavit, ¶¶ 10-13]

Brewer's review of the Ohio BMV database was partially corroborated by an undated and partially completed BMV affidavit. [Doc. 18-1, BMV Affidavit, PAGEID 75]  In the affidavit, an officer certified that the Neon was impounded by the police under R.C. 4513.61 because the Neon had been left 'unclaimed on public property.'  [Id.]  And a second officer documented that Middletown assigned its ownership of the Neon to Mark's Towing. [Id.]

Brewer valued the Neon at $7500.00.  Also, Henry never recovered the personal property he stored in the Neon.  [Doc. 18-3, Brewer Affidavit, ¶¶ 11-12 and 15, PAGEID 85; and Doc. 21-2, Henry Affidavit, ¶¶ 15, PAGEID 124]

A second appellant is Brian Baker.  On 1 November 2011, an officer subjected Baker to a traffic stop.  [Doc. 21-4, Baker Affidavit, ¶ 1, PAGEID 128]  The officer claimed he saw Baker swallow something. [Id.]  A search yielded a single Vicodin, which Baker had a prescription for.  [Id.]  The officer searched the van for other evidence.  [Id. at ¶ 2]  Thereafter, he

4

arrested Baker for Vicodin possession and tampering with evidence. [Doc. 18-4, Baker Police Report, PAGEID 90]  Upon arrest, Baker asked the officer to permit him to call his father to arrange to move the van to his home, located 2-blocks from the traffic-stop location. [Doc. 21-4, Baker Affidavit, ¶ 2, PAGEID 128]  But the officer ignored Baker. [Id.]  Instead, he arranged for Mark's Towing to tow the van to the police-impound lot. The officer documented that the reason for towing the van was Baker's drug arrest. [Doc. 18-5, Impound Ticket, PAGEID 95]

Police administration sent Baker a form letter regarding the van.  A copy of the actual letter was lost, so only a copy of a standard form letter is available. [Doc. 18-5, Birk Affidavit, ¶ 6, PAGEID 93]  This form letter advised Baker, inter alia, that the City possessed his van under R.C. 4513.61 and would auction it under R.C. 4513.62 or obtain a salvage title "*** if it is not claimed within ten days of the date of mailing of the notice." [Doc. 18-5, Form Letter, PAGEID 96]

Baker received the letter and called the officer in charge of the impound lot.  Baker claimed the van. [Doc. 21-4, Baker Affidavit, ¶ 4, PAGEID 128]  The officer responded by telling Baker he wouldn't get the van back, even if he beat the case; and, further, that Baker had to pay the towing and impound fees. [Id.]  Baker told the officer he could not afford

5

towing and impound fees, so he would wait to reclaim the van until the Grand Jury cleared him. [Id.]

And, indeed, the Butler County Grand Jury no-billed Baker's case on 22 February 2012. Baker then contacted the impound lot to retrieve his van, believing that the City lacked the legal authority to hold the van absent a pending case. But Baker was told that the van was auctioned by the City earlier that same morning. [Id. at ¶ 5]

Like the lost letter, the City likewise could not produce the BMV affidavit that transferred title from Baker to it. But it did produce a receipt from the Title Agency indicating that the City obtained title for the van on 19 January 2012, about a month before the auction. [Doc. 18-2, Title Receipt, PAGEID 80] Baker had used the auctioned van for work, and it contained paint and supplies when it was seized that Baker never recovered. [Doc. 18-5, Van Inventory, PAGEID 95]

The last appellant is Ira Hardy. On 27 March 2012, an officer subjected Hardy to a traffic stop in Hardy's Ford Taurus. [Doc. 18-6, Hardy Police Report, PAGEID 100] He was arrested because he allegedly aided codefendants as the getaway driver from a burglary and robbery. [Id.] Officers searched his Taurus at the scene for evidence, and ordered it towed by Mark's Towing to the police-impound lot. [Doc. 21-3, Hardy Affidavit, ¶

2-3, PAGEID 125]  The officer documented that the reason for towing the Taurus was Hardy's arrest. [Doc. 18-2, Impound Ticket, PAGEID 82]

Police administration sent Hardy a letter regarding the Taurus. [Doc. 18-2, Form Letter, PAGEID 81]  The letter instructed Hardy to contact that Middletown police to recover the Taurus; that its release required proof of title, a court writ, or court order; and that, under R.C. 4513.61 and .62, the City would sell the Taurus at auction in 10-days "*** if no action is instituted, by you or your agency, to reclaim it." [Id.]

Hardy received the letter and immediately called the detective in charge of the burglary case. [Doc. 21-3, Hardy Affidavit, ¶ 5, PAGEID 125] He claimed his vehicle.  [Id.]  The detective told Hardy to disregard the letter and that he would return the Taurus if Hardy cooperated in the prosecution of his codefendants. [Id.]  Hardy agreed. [Id. at ¶ 6]

On 9 May 2012, Hardy was indicted by the Butler County Grand Jury. The court appointed Hardy an attorney.  That attorney made regular contact with the detective regarding the Taurus.  [Id. at ¶ 8]  In various proffers, the detective reiterated that Hardy would receive the Taurus in exchange for cooperation.  [Id. at ¶ 9]  At one point, the detective told Hardy that he would speak with the County Prosecutor to facilitate the Taurus' return. [Id.]

7

On 26 September 2012, Hardy pled to a reduced offense due to his cooperation. After the plea hearing, he contacted the detective yet again for the return of his Taurus. [Id. at ¶ 11]  The detective told Hardy he had to pay for the tow and storage, so Hardy borrowed the money from his sister. [Id.]  When Hardy arrived at the police division with the money, the detective pulled paperwork for the Taurus and advised Hardy he had put it aside to prevent the Taurus' sale. [Id.]  Hardy and the detective then drove to the impound lot. [Id.]  But the Taurus was not there. [Id.]

The impound-lot officer later called Hardy and told him the Taurus had been auctioned on 6 June 2012. [Id. at ¶ 12]  The officer then remarked that Hardy could recover the Taurus if he paid the tow and storage, which Hardy believed to be strange and false because an auction cannot be undone. [Id.]

The BMV affidavit regarding the Taurus indicated that it was impounded on 27 March 2012 under R.C. 4513.61 because it was 'left unclaimed on public property.' [Doc. 18-2, BMV Affidavit, PAGEID 83]  This affidavit lacked an affiant and any sworn certification regarding notice and abandonment, but was notarized in two different places by Mary Miller, a secretary in the City's detective section. [Id.]  Finally, a receipt from the Title Agency indicated that the City obtained title to the Taurus on

11 April 2012, about 2-months before the June auction and 15-days after the Taurus had been seized. [Doc. 18-2, Title Receipt, PAGEID 84]

Hardy had paid off the Taurus. It represented his sole means for transport to school, work, and court. [Doc. 21-3, Hardy Affidavit, ¶ 15, PAGEID 125]

The City's prosecutor at the time of these events testified that she created the policy and procedure for the seizure, towing, and storage of vehicles at the impound lot. She reduced these policies and procedures to writing, although the City could not produce them in discovery. [Doc. 21-1, City Prosecutor's Affidavit, ¶ 8, PAGEID 121] She further testified, inter alia, that the City's policy and procedure was to auction a vehicle if the owner claimed it but could not pay for the tow and storage. [Id. at ¶ 10]

Henry, Baker, and Hardy sued the City under § 1983. [Doc. 1, Complaint, PAGEID 1] All appellants alleged procedural due process and access to the courts claims; and Henry presented his own private-taking claim. Appellants' due-process theory was that the City's policy, practice, and custom was to deem vehicles to be abandoned and unclaimed under R.C. 4513.61— regardless of the actual facts and without a fact-finding hearing—in order to trigger the summary transfer-title provision that allowed it to auction the vehicles and keep the proceeds. Their access-to-

courts theory was that Ohio law imposed a duty on the City, under R.C. 2981.11(A)(1), to safeguard and return the vehicles when no longer needed in the underlying criminal cases, and that the City's policy, practice, and custom eliminated their ability to petition a court for the vehicle's return. Henry's private-taking theory was that the City seized his Neon and transferred title to Mark's Towing—under the policy, practice, and custom of deeming his vehicle abandoned and unclaimed—where Mark's Towing auctioned the Neon and retained the proceeds.

The City moved for summary judgment, which appellants opposed. [Doc. 18, Defendant's Summary-Judgment Motion, PAGEID 48; Doc. 21, Plaintiffs' Memorandum Contra Summary Judgment, PAGEID 105] The district court granted the motion. It held, inter alia, that R.C. 4513.61 was satisfied in appellants' cases, authorizing the involuntary transfer of the titles to the City and the subsequent auctions; that the City did not obstruct appellants' ability to access the courts because appellants had a sufficient opportunity to retrieve their vehicles from impound before the titles transferred and the auctions occurred; and, finally, that Henry's private-taking claim failed because its transfer of title to Mark's Towing benefitted the public by removing a public nuisance. [Doc. 29, Summary Judgment Decision, PAGEID 165-73]

This timely appeal follows.

## SUMMARY OF THE ARGUMENT

The district court misinterpreted R.C. 4513.61 and ignored Ohio cases that restrict its scope. Properly construed, R.C. 4513.61 authorizes a local government to unilaterally transfer a car title to itself in only two circumstances: 1) where the owner abandons the car and fails to reclaim it after notice; or, 2) where the owner abandons the car, reclaims it, but cannot supply proof of ownership or pay removal and storage costs. Absent abandonment, a local government maintains a duty to return a car it seizes to its owner when the reason for holding the car ends.

Here, the City's policy, practice, and custom of unilaterally determining that R.C. 4513.61 was satisfied to permit the transfer of a car title to itself violated due process. The only issue is the adequacy of the process used—as the City's title deprivations occurred at regular and established intervals, rather than randomly. The process used was inadequate. Appellants maintained a substantial interest in the ownership and use of their vehicles. An adversary hearing with a neutral factfinder would ensure that facts supported the conclusion that the owner abandoned his vehicle, and would check the City's incentive to find against the owner to retain the auction proceeds. Finally, the City's enforcement

11

interest under R.C. 4513.61 concerned clear streets, which is achieved upon a car's seizure, and would not be impacted by a pre-deprivation hearing. In addition, the City interest in recouping towing and storage costs is limited by R.C. 4513.61 to owners that abandon their vehicles—as these owners impliedly consent to removal costs by their abandonment. So the City's recoupment interest is advanced, and not reduced, by a pre-deprivation hearing to establish that an abandonment actually occurred.

Finally, the City committed an unconstitutional private taking in Henry's case. The City took Henry's title under R.C. 4513.61 and assigned it to a private towing business, which then sold the car at auction and kept the proceeds. The public was not benefited by this transfer from Henry to the towing company.

## ARGUMENT

This court reviews de novo the district court's summary-judgment decision. *Seay v. TVA,* 339 F.3d 454, 463 (6th Cir. 2003).

The district court held that R.C. 4513.61 "*** authorizes the police department to declare an unclaimed vehicle a nuisance and dispose of it ten days after notice is issued ... A post-towing hearing, therefore, was not necessary to determine whether Plaintiffs had abandoned their cars." [Doc. 29, Summary Judgment Decision, PAGEID 169] Further, the district court

held that 'claiming' a vehicle under R.C. 4513.61 requires proof of ownership and payment of the towing and storage bills. [Id.] It reasoned that no plaintiff supplied such proof or paid his bill within the 10-days, justifying the City's use of R.C. 4513.61 to transfer title to itself and sell the vehicles at auction. [Id.]

The district court erred in its interpretations of R.C. 4513.61. As discussed below, the Ohio courts require evidence that an owner *actually abandoned* his vehicle before R.C. 4513.61 applies to transfer title, where abandonment is an intentional relinquishment. Contrary to the district court's holding, the Ohio cases do not apply R.C. 4513.61 to permit local government to declare a vehicle a public nuisance and transfer title to itself where it was not abandoned. Further, the district court misconstrued R.C. 4513.61's 'claim' provision, which arises only *after the vehicle is abandoned in the first instance.* Contrary to the district court's holding, appellants' cars were seized and never abandoned, so R.C. 4513.61's reclaiming provision was never implicated. Finally, the district court failed to consider R.C. 4513.61 in pari materia with former R.C. 2933.41 and R.C. 2981.11(A)(1). The former statute supplies local government with a summary mechanism to dispose of abandoned and hazardous vehicles left in a roadway. The latter statutes imposed a duty upon local government to

safeguard and promptly return the property it seizes that it no longer has a reason to hold.  Contrary to the district court's holding, R.C. 2981.11(A)(1) applied because appellants had not abandoned their vehicles, requiring the City to promptly return them.

A) **R.C. 4513.61 is limited to cases where an owner abandons his vehicle, impliedly consenting to seizure and storage.  It has no application where government knows the owner's identity and seizes his car**.

The leading case on the scope of R.C. 4513.61 is *Doughman v. Long*, 42 Ohio App.3d 17 (12th Dist. 1987).  There, a thief stole a pickup and abandoned it.  Id. at 18.  The owner reported the theft to law enforcement and claimed his pickup.  Id.  A trooper discovered the pickup, and ordered it towed to the tow lot.  Id.  Efforts to notify the owner failed.  Id. at 18-19.  Over 2-years passed, and the tow company sought to declare the pickup abandoned under R.C. 4513.61 to transfer title to itself; alternatively, it sought the towing bill and 2-years of storage costs.  Id. at 19.  On appeal, the court, as a matter of first impression, held that R.C. 4513.61 applies to abandoned vehicles only, and that abandonment requires proof of intentional relinquishment.  Id. at 21.  In reaching this conclusion, the court noted that the legislature enacted R.C. 4513.61 to clear the streets of hazards and dilapidated vehicles, and that an owner's abandonment

14

implies his consent for removal and costs.    Id. at 21.    Without
abandonment, that consent is absent.    Thus, the court found R.C. 4513.61
inapplicable: the pickup was stolen, not abandoned by the owner; and the
tow company could not use R.C. 4513.61 to transfer title to itself or recoup
its costs. Id. at 22.

In all subsequent stolen-car cases, Ohio courts have followed
*Doughman*, reasoning that a stolen vehicle is not an abandoned one, and
that R.C. 4513.61's title-transfer provision is limited to actual
abandonment. See, e.g., *Labay v. Caltrider*, 9th Dist. App. 22233, 2005-
Ohio-1282, ¶ 14 (stolen truck was not abandoned under the statute); and,
*State Farm Ins. Co. v. Jones*, 11th Dist. No. 2002-P-0063, 2003-Ohio-
4035, ¶ 12-15.

In other contexts, Ohio courts have followed suit regarding R.C.
4513.61's limited scope.    Thus, in *Smith v. State Highway Patrol,* Court of
Claims No. 2006-02609-AD, 2007-Ohio-6397, ¶ 1, the plaintiff crashed his
ATV while operating it under the influence. The State Patrol seized the ATV
from the scene, and impounded it for many months while it investigated
felony charges.  Id. at ¶ 2. The plaintiff requested the release of the ATV but
was rebuffed.  Id. at ¶ 3. Upon the conclusion of his DUI case, the plaintiff
sued the State Patrol to recover his payments to a private company for the

15

towing and storage of the ATV during the State Patrol's investigation. The State Patrol denied liability, arguing that R.C. 4513.61 authorized both the seizure and the storage costs. Id. at ¶ 5, Fn. 2. In fact, the State Patrol used the same argument that the district court adopted herein. But the court disagreed. It held that plaintiff had not abandoned the ATV within the meaning of R.C. 4513.61. Id. To the contrary, it was taken from him and he repeatedly sought its return. Therefore, the court awarded plaintiff a money judgment from the State Patrol for the towing and storage costs that plaintiff had advanced. Id. at ¶ 8.

Similarly, in *Broadvue Motors, Inc. v. Maple Hts. Police*, 135 Ohio App.3d 405, 407-8 (8th Dist. 1999), a dealership loaned a Mercury Grand Marquis to a potential buyer. The buyer parked the Marquis on a public street for a few days, which resulted in a police investigation. Id. The police determined the car had fictitious tags and towed it to a lot. Id. The dealership was notified, and later received a R.C. 4513.61 notice indicating the local government's intent to deem the Marquis abandoned unless claimed within 10-days. Id. The dealership failed to respond to the notification. Id. So the local government obtained title under R.C. 4513.61 and put the Marquis to use in its fleet. Id. The dealership became aware that the Marquis was missing from its inventory, and sued to undo the title

transfer. Id. The court held that R.C. 4513.61 could not support the title transfer because the Marquis was not abandoned where it was seized for a tag violation and the local government knew the identity of the actual owner. Id. at 409.

Taken together, these cases undermine the district court's interpretations. R.C. 4513.61's transfer-title provision is limited to abandoned vehicles; it does not apply when the vehicle is stolen and abandoned by a thief; or where the vehicle is seized for an investigation; or where the local government knows the identity of the owner. If the district court's interpretation of R.C. 4513.61 was correct, each of these cases would have been decided differently, since the local government could have simply declared the pickup, the ATV, or the Marquis a 'public nuisance' when they went unclaimed for a period of 10-days. Proof of abandonment is required for a R.C. 4513.61 title transfer.

B) **An owner impliedly consents for the City to tow and store an abandoned vehicle; therefore, R.C. 4513.61 permits the City to require payment of costs and proof of ownership before returning that vehicle. But this reclaiming provision has no application to a vehicle that was never abandoned**.

The district court also misconstrued R.C. 4513.61 when it held that the City could transfer appellants' titles to itself if the appellants failed to make a legally sufficient claim for the vehicles, where 'claim', as understood

17

by the district court, required proof of ownership and the payment of costs. [Doc. 29, Summary Judgment Decision, PAGEID 169]

This construction places the cart before the horse. Under R.C. 4513.61, a vehicle must first be abandoned, or intentionally relinquished, which the statute presumes to occur when a car is left in a public way for at least 48-hours. *Then*, the local government must search its records for the owner, notify him, and allow him to reclaim the abandoned vehicle within 10-days. This reclaiming, occurring *after an actual abandonment*, must be honored upon the owner's "*** payment of any expenses or charges incurred in [the car's] removal and storage, and presentation of proof of ownership." Id. Recall that the towing and storage payments identified in the statute are authorized because the owner impliedly consented to them by abandoning his vehicle in the first instance. *Doughman v. Long*, 42 Ohio App.3d 17, 21 (12th Dist. 1987).

In this case, no plaintiff abandoned his car. Instead, each car was seized from them in a criminal case. The City knew each appellants' identity, so there was no reason to search its records to notify the owner. Because there was no abandonment, and because no plaintiff impliedly consented to towing and storage costs through his abandonment, no claim or reclaiming was required of appellants.

18

Moreover, even if the district court was correct in its interpretation, there is sufficient summary-judgment evidence to establish that appellants Henry and Hardy reclaimed their vehicles. Henry deputized Brewer to reclaim his Neon, and Brewer notified Mark's Towing he would pay the bill. [Doc. 18-3, Brewer Affidavit, ¶ 6, PAGEID 85] But Mark's Towing refused to accept the money. [Id. at ¶ 7] Hardy borrowed money from his sister, and presented at the City lot with the funds to pay his bill, but was rebuffed because his Taurus had already been sold. [Doc. 21-3, Hardy Affidavit, ¶ 11, PAGEID 126]

### C) The City had a duty under R.C. 2981.11(A)(1) to safeguard and then return the vehicles it seized.

Because the district court erroneously interpreted R.C. 4513.61 to authorize the City's transfer of appellants' titles to itself and to sell their vehicles at auction, it had no occasion to consider the City's duty to safeguard and return appellants' vehicles when its reasons for holding them ended.

Ohio law has imposed this duty for decades. Former R.C. 2933.41(B) required local government "*** to make a reasonable effort to locate the persons entitled to possession of property in its custody, to notify them of when and where it may be claimed, and to return the property at the

earliest possible time." This duty did not apply to contraband, criminally-forfeited vehicles, forfeited property, tainted Medicaid funds, or lost, abandoned, or stolen property. Former R.C. 2933.41(A)(1). In 1991, the Ohio Attorney General issued an opinion amplifying a local government's duties under former R.C. 2933.41. It emphasized that former R.C. 2933.41 was premised on a policy that personal property remained the property of the person it was seized from, unless disseized by forfeiture; that local government maintained a duty to investigate who owned the property and return it at the earliest possible time; and that unclaimed property could not be disposed of without a court order. OAG 91-021, syllabi 1, 3, and 4. In 2007, the Ohio General Assembly enacted a comprehensive reform measure, Sub.H.B. 241, which created R.C. Chapter 2981 in order to consolidate the forfeiture and property-responsibility statutes into a single Chapter of the Code. Former R.C. 2933.41 was repealed, and its language was recodified in R.C. 2981.11. The Ohio Legislative Services Commission stated that no substantive changes were intended by repealing R.C. 2933.41 and enacting R.C. 2981.11. Ohio Legislative Services Commission, *Bill Analysis of Sub.H.B. 241* (126th General Assembly), pp. 24 and 26.

In keeping with the duty to return seized property to its owner, Ohio courts have rejected a local government's effort to deem a vehicle

20

abandoned under R.C. 4513.61 where abandonment was not shown and the duty to return the vehicle arose.

For example, in *Labay v. Caltrider*, 9th Dist. App. No. 22233, 2005-Ohio-1282, the court invalidated a transferred title and sale under R.C. 4513.61 because a pickup had been stolen, not abandoned. The concurring judge reasoned that the inapplicability of R.C. 4511.61 triggered the local government's statutory duty, under former R.C. 2933.41, to safeguard and return the pickup. Id. at ¶¶ 29-30. Likewise, in in *Broadvue Motors, Inc. v. Maple Hts. Police*, 135 Ohio App.3d 405, 407-8 (8th Dist. 1999), the court invalidated a transferred title under R.C. 4513.61 because the local government knew the identity of the owner so it was not abandoned. The court held that former R.C. 2933.41 applied and imposed a duty to return the vehicle, and that it violated its duty by misusing R.C. 4513.61. Id. at 411.

In this case, for the reasons advanced above, R.C. 4513.61 was inapplicable and unable to support the City's title transfers and auctions. Instead, R.C. 2981.11(A)(1) imposed a duty on the City to return appellants' vehicles when its reasons for holding them ended.

D) **The City's policy, practice, and custom was to unilaterally determine it had satisfied the elements under R.C. 4513.61 in order to take car titles from owners. This violated due process. An adversary hearing with a neutral factfinder was necessary to determine the facts surrounding**

**abandonment and to remove the City's financial incentive to decide cases in its favor.**

The due-process clause entitled appellants to an opportunity to be heard before being deprived of their vehicles.  That opportunity had to occur at a meaningful time and a meaningful place.  In this case, appellants have not claimed a right to a hearing before their cars were seized and towed to the impound lot.  They concede that the City maintained the right to seize and hold their vehicles in connection with their criminal cases as evidence, or in advance of a possible forfeiture.  Instead, appellants claimed a right to a hearing to contest the City's claim of abandonment under R.C. 4513.61 before their car titles were taken from them.  Because appellants' due-process claim regards the City's policy, practice, and custom of unilaterally determining that R.C. 4513.61 was satisfied to permit title transferring, the only due-process issue is the adequacy of the process used. *Moore v. Board of Educ. of Johnson City Schools*, 134 F.3d 781, 784 (6th Cir. 1998)(citing *Mathews v. Eldridge*, 424 U.S. 319, 47 L.Ed.2d 18 (1976). The existence or adequacy of Ohio tort remedies is immaterial, as that inquiry is limited to due-process claims for random and unauthorized acts, which this case does not present.  Id.

*Mathews v. Eldridge*, 424 U.S. 319, 47 L.Ed.2d 18 (1976) controls whether the process used is adequate, and employs a three-part balancing

test: 1) the private interest affected by the official action, 2) the risk of error in the procedure used, and 3) the City's burden in providing a process before the deprivation. *Mathews*, 424 U.S. at 335.

The district court decided against appellants on the second factor. It did not directly address the first or third factors. Regarding the second factor, the district court held that R.C. 4513.61's title-transferring provision did not carry a significant potential for factual disputes to require a hearing. As noted above, it interpreted R.C. 4513.61 to lack an abandonment element, and to turn, instead, on whether the police seized the vehicle while performing their duties and whether the owner made a cognizable claim after 10-days notice. [Doc. 29, Summary Judgment Decision, PAGEID 168-9] Essentially, the district court reasoned that the risk of a factual error about what it believed R.C. 4513.61 demanded was too remote to require any process at all.

The district court's second-factor analysis suffers from its faulty premise. As argued supra at Section B, the Ohio courts require evidence that an owner *actually abandoned* his vehicle before R.C. 4513.61 applies to transfer title, where abandonment is an intentional relinquishment. Properly understood then, a pre-deprivation hearing would carry the potential to correct errors and to resolve all the determinative facts. For

example, the factfinder could decide that the owner abandoned the car and made no claim, allowing for the title transfer; or it could find the owner abandoned the car, responded to the notice, but failed to reclaim the car by paying the bill, also allowing for the title transfer; or it could determine that the local government knew the owner's identity, that the car was stolen, or that the car was seized for evidence and not abandoned, and deny the local government's title-transfer request. So contrary to the district court's conclusion, a pre-deprivation hearing would present a meaningful forum for resolving determinative facts.

Another aspect of the second factor, unmentioned by the district court, concerns the City's incentive for denying process and the absence of a neutral factfinder. The City benefits by denying process. Without an adversary hearing, the City's policy, custom, and practice, as demonstrated on these facts, was to unilaterally decide that it had satisfied the elements from R.C. 4513.61, justifying a title transfer and the sale of the vehicle at auction. Retaining the auction proceeds became especially important to the City after 2010, when the State balanced its Great-Recession budget by cutting local government funds in half. Thus, in *United States v. Good Real Property*, 510 U.S. 43, 126 L.Ed.2d 490 (1993), the Supreme Court found a due process violation under the second factor where the government used

an ex parte process to take immediate possession over a home it sought to forfeit. The court observed that the government's financial interest in immediate possession would color its ex-parte evidence and therefore risk error at the ex-parte hearing. Id. at 55-56. That problem is more acute in our case. Not only does the City possess a financial incentive to use R.C. 4513.61 to enrich itself, it also adjudicates the evidence. An adversary hearing with a neutral factfinder is required to check the City's incentive to misuse R.C. 4513.61 to enrich itself at appellants' expense.

Alternatively, the district court held that the second factor was satisfied because the City provided a sufficient hearing by permitting appellants to reclaim their vehicles by paying towing and storage. [Doc. 29, Summary Judgment Decision, PAGEID 170]   This is wrong on the facts and law.

The summary-judgment facts do not support the conclusion that the City provided appellants with a reasonable opportunity to repossess their vehicles upon payment. Henry's evidence is that the City permitted Mark's Towing to possess the vehicle on their lot. While the title-transfer affidavit pended, Henry's agent, Brewer, told Mark's Towing he would pay Henry's bill. But he was rejected. [Doc. 18-3, Brewer Affidavit, ¶¶ 6-7, PAGEID 85] Similarly, Hardy was told by the detective to disregard his 10-day notice

and that his cooperation would result in the Taurus' release. He complied. And after his cooperation produced a plea agreement, he followed through by borrowing money from his sister and presenting to the City lot prepared to pay his bill. But the City had already auctioned the Taurus. [Doc. 21-3, Hardy Affidavit, ¶ 11, PAGEID 126] Regarding Baker, the impound-lot officer flatly told him that the car would not be released. [Doc. 21-4, Baker Affidavit, ¶ 4, PAGEID 128] Therefore, the district court misconstrued the summary-judgment evidence when it concluded that the City provided appellants with sufficient process by offering them an opportunity to pay their bills to release their vehicles.

Even more importantly, it is legally incorrect to construe the second factor in this manner. The district court reasoned that the opportunity to pay costs under R.C. 4513.61 to reclaim an abandoned car was sufficient process to resolve a dispute about whether the cars were actually abandoned and that the owner impliedly consented to the towing and storage costs. *Doughman v. Long*, 42 Ohio App.3d 17, 21 (12th Dist. 1987). Recall that the second factor regards *the risk of error in the procedure used.* Put aside, for the moment, the financial burdens. The payment of costs lacks a relationship to the risk of error in the R.C. 4513.61 determination. If paying costs were a process, the City could escape any

responsibility for deciding the facts surrounding R.C. 4513.61, seize any car it chooses, and then simply require the owner to pay up. This *increases* the risk of error. The City would possess no incentive to determine R.C. 4513.61 in an owner's favor.

The cases cited by the district court on this point are unavailing. For example, in *Frier v. City of Vandalia*, 770 F.ha2d 669 (7th Cir. 1985), a concurring judge, in passing on an owner's due-process challenge to the absence of a timely post-tow hearing, suggested that the payment of a nominal fee for releasing the car, in combination with the right to challenge the tow in a later state-court hearing, satisfied due process. Appellants have no quarrel with this suggestion. But, unlike *Frier*, appellants were never afforded a hearing to challenge the R.C. 4513.61 determination.

As noted above, the district court failed to reach the first and third *Mathews* factors. Appellants have presented sufficient summary-judgment evidence to satisfy each.

Regarding the first factor, each plaintiff possessed a substantial interest in both owning and utilizing their vehicles. Henry's Neon was paid for; and, because his wife recently died, it represented his only transportation for errands and health care. [Doc. 21-2, Henry Affidavit, ¶ 16, PAGEID 124] Baker used his van for transport to painting jobs and to

27

store paint and materials. And Hardy's Taurus was likewise paid for, and represented his only means to travel to school, for work, for court appearances and errands. [Doc. 21-3, Hardy Affidavit, ¶ 15, PAGEID 126] Each plaintiff suffered a deprivation of his ownership and use of his vehicle by the City's action transferring title.

Regarding the third factor, the City's interest in enforcing R.C. 4513.61 is "*** clearing the streets of real and potential traffic hazards as well as derelict vehicles." *Doughman v. Long*, 42 Ohio App.3d 17, 21 (12th Dist. 1987). Its secondary interest is to recover towing and storage costs where the owner "*** presumptively abandoned his vehicle and thereby impliedly consented to its removal by a local police agency." Id. There is no pressing need for the City to accomplish these purposes without a pre-deprivation hearing. At the point a car is seized and towed to a lot, it no longer occupies the street or obstructs traffic. So a pre-deprivation hearing would not interfere with the City's primary objective. In fact, such a hearing would have established that the street-clearing objective did not apply to Henry, whose Neon was seized from his own driveway. Moreover, the City's secondary interest is not advanced by a summary action. To the contrary, it is only advanced through a hearing that would determine that the owner abandoned his vehicle and impliedly consented to removal and

costs.  Charging towing and storage to *all owners*, regardless of an actual abandonment, is over-inclusive because it recoups all costs in all cases, and not just implied-consent cases.

For the above reasons, the City afforded appellants insufficient process before depriving them of their titles and vehicles under the auspices of R.C. 4513.61.

E) **The City's policy, practice, and custom was to unilaterally determine it had satisfied the elements under R.C. 4513.61 in order to take car titles from owners.  In Henry's case, this constituted a private taking when the City assigned title to Mark's Towing with no attendant public benefit.**

A private taking is always unconstitutional.  A private taking occurs when the government takes property to benefit a private party, and there is no appreciable use or benefit conferred to the public.  *Montgomery v. Carter County*, 226 F.3d 758, 771-2 (6th Cir. 2000).

The district court found there were no material facts to support Henry's private-taking claim.  Specifically, it decided that the City's transfer of title to Mark's Towing abated a public nuisance—thereby conferring a public benefit.  [Doc. 29, Summary Judgment Decision, PAGEID 173]

The summary-judgment facts fail to support this conclusion.  Henry's Neon was seized from his own private driveway.  [Doc. 18-1, Henry Police Report, PAGEID 71]  This lacked any public dimension, as the Neon,

29

situated in the driveway, did not obstruct traffic or present to neighbors as dilapidated. Also, the Neon was not abandoned within the meaning of R.C. 4513.61 because it was not relinquished on a public street, and because the City knew that Henry was the Neon's owner from the outset. Finally, it is undisputed that the City used R.C. 4513.61 to transfer title to itself, and then assigned it to Mark's Towing—a private business. [Doc. 18-1, BMV Affidavit, PAGEID 75]

On these facts, a jury could find that the title transfer to Mark's Towing resulted in a private benefit only, and that the Neon's presence in Henry's driveway was not a public nuisance. So summary judgment on this claim was error.

## CONCLUSION

For the above reasons, appellants request that the court reverse the district court's summary-judgment decision and remand the case for proceedings consistent with a conclusion that appellants' constitutional rights were violated.

To the court, the instant Merit Brief is

Respectfully submitted,


/s/ Christopher J. Pagan
Christopher J. Pagan

## CERTIFICATE OF COUNSEL

I hereby certify that this Merit Brief was prepared in 14 point Georgia font, using Microsoft Word software, and that it contains 7026 words.

/s/ Christopher J. Pagan
Christopher J. Pagan

## PROOF OF SERVICE

I hereby certify that on 27 May 2015 a copy of the foregoing Merit Brief was filed with the court and that copy was sent electronically to opposing counsel.

/s/ Christopher J. Pagan
Christopher J. Pagan

# ADDENDUM

## UNITED STATES SIXTH CIRCUIT COURT OF APPEALS

## CINCINNATI, OHIO

**DENNY HENRY, et al,**       :      **CASE NO:** 15-3119

         **Appellants,**       :

                             :

**vs.**                         :

                             :

**CITY OF MIDDLETOWN,**       :

         **Appellee.**       :

## APPELLANTS' DESIGNATION OF DISTRICT COURT DOCUMENTS:

| DESCRIPTION OF ITEM | FILED | RECORD ENTRY NO. | PAGE ID# |
|---|---|---|---|
| Complaint | 6/17/13 | 1 | 1 |
| Defendant's Summary Judgment Motion | 10/3/14 | 18 | 48 |
| Henry Police Report | 10/3/14 | 18-1 | 71 |
| BMV Affidavit | 10/3/14 | 18-1 | 75 |
| Form Impound Letter | 10/3/14 | 18-2 | 78 |
| Impound Ticket | 10/3/14 | 18-2 | 79 |
| Title Receipt | 10/3/14 | 18-2 | 80 |
| Form Letter | 10/3/14 | 18-2 | 81 |

| Impound Ticket | 10/3/14 | 18-2 | 82 |
|---|---|---|---|
| BMV Affidavit | 10/3/14 | 18-2 | 83 |
| Title Receipt | 10/3/14 | 18-2 | 84 |
| Brewer Affidavit | 10/3/14 | 18-3 | 85 |
| Baker Police Report | 10/3/14 | 18-4 | 90 |
| Birk Affidavit | 10/3/14 | 18-5 | 93 |
| Impound Ticket | 10/3/14 | 18-5 | 95 |
| Form Letter | 10/3/14 | 18-5 | 96 |
| Hardy Police Report | 10/3/14 | 18-6 | 100 |
| Memoranda Contra Summary Judgment | 11/5/14 | 21 | 105 |
| City Prosecutor's Affidavit | 11/5/14 | 21-1 | 121 |
| Henry Affidavit | 11/5/14 | 21-2 | 123-124 |
| Hardy Affidavit | 11/5/14 | 21-3 | 125 |
| Baker Affidavit | 11/5/14 | 21-4 | 128 |
| Summary Judgment Decision | 1/12/15 | 29 | 157-175 |